May it please the court, Kyle Hosmer on behalf of the appellant defendant Steven LaVaughn Morris. In United States v. Carthorne, this court wrote that counsel's ignorance of a point of law that is fundamental to his case combined with the failure to perform basic research on that point is a quintessential example of unreasonable performance. The court further found that as of 2013 there was clear Supreme Court and Fourth Circuit precedent detailing the analytical framework for determining whether a crime of violence could serve as a predicate offense for a career offender designation. The court thus concluded in Carthorne the counsel may be constitutionally required to object when there is relevant authority strongly suggesting that a sentencing enhancement is not proper. Existing case law in 2013 provided that Virginia's abduction statute does not constitute a crime of violence for purposes of the abduction statute, however, didn't point that out to the district court despite having at least three opportunities to do so. To the contrary, trial counsel affirmatively represented that Mr. Morris was a career offender because of a prior Virginia attempted abduction conviction. As a result of trial counsel's non-objection, the district court sentenced Mr. Morris under a guidelines range of 360 months to life imprisonment as a career offender. So when counsel would have researched applicable law for that proposition at the time and he found this United States v. Washington case, which is a unpublished case, but it said that it seemed to indicate that the crime of Virginia abduction was a crime of violence. What effect would that have had on his obligations at that point? We have two answers to that question, Your Honor. The first is that I don't believe United States v. Washington stands for the proposition that Virginia's abduction statute is a crime of violence. There, the question before the court, as presented by the defendant, was whether Virginia's abduction statute was a Class A violation. That was the issue before the court. It wasn't whether it was a crime of violence for purposes of the sentencing guidelines. Further, though the It didn't cite any case law on that point. It didn't engage in any of the categorical or modified categorical inquiries. And further, it argued almost entirely from the facts of conviction for that defendant's particular case. So I think, first, Washington doesn't stand for the proposition that Virginia's abduction statute is a crime of violence. But also, the ineffectiveness standard does take into account duties of counsel. So one of the things that counsel would have done when researching the guidelines and potential objections thereto would possibly identify Washington, but on the other hand, identify a significant body of countervailing case law that went the other way. In particular, from the D.C. Circuit, which in 2009 said, for purposes of the guidelines, Virginia's attempted abduction statute is not a crime of violence because of its breadth. Was that the one that said that it's not covered by the generic kidnapping enumeration? That's correct, Your Honor. So I think there are two questions here, right? One is whether there was case law strongly suggesting that it wouldn't be covered through a match to generic kidnapping. And I'm certainly prepared, at least for the sake of argument, to say that it's been turned up. But then there is this separate question about whether it's covered by the residual clause. And that's where Washington comes in and a bunch of other cases saying that even crimes that can be committed kind of by deception and without actual use of force can come in under the residual clause. So what's counsel supposed to do with all of that? How does that strongly suggest that this wouldn't come in under the residual clause? Yes, Your Honor. So I think, first, under the residual clause, this Court has looked at the elements of the offense of conviction and not considers generic kidnapping broadly, which is the error in the government's reasoning, and it was the error in the district court's reasoning in its 2255 opinion. Looking specifically at Virginia's abduction statute, the Supreme Court of Virginia has held that it's a divisible statute, that it enumerates a number of different elements in the disjunctive, and each of those elements can satisfy or satisfy a conviction. And this gets to the point that you have to look to the least serious means under the Supreme Court's Taylor case, this Court's Johnson case, when analyzing Virginia's abduction statute under the residual clause. And here, the... The way you just defined it, though, would seem to indicate you would apply the modified categorical approach. Because it's a divisible statute, Your Honor, but because there are no Shepard-approved documents in the record for Mr. Morris, you look to the least serious means that would support a conviction under the statute. And so, considering abduction that can be completed through deception alone, the Seventh Circuit has held that Indiana's statute, which can be supported by deception alone, does not satisfy the residual clause. The Second Circuit in Dixon said the same thing. And more broadly, as the D.C. Circuit in its 2009 opinion noted, Virginia is exceptionally unique in its abduction statute. It's exceptional in its breadth and in the lack of severity needed to support a conviction. So it makes sense that cases from other circuits that consider more serious abduction statutes would find that those statutes satisfy their residual clause. But what we can't do under this Court's case law is to say kidnapping generally satisfies the residual clause. Therefore, it would do so here. The district court didn't do that. The district court, as I recall at least, cited a whole bunch of Fourth Circuit cases that dealt with other offenses but went to kind of the same question. If you can commit a crime through deception or stealth, is it still covered by the residual clause? And it pointed to a bunch of Fourth Circuit cases saying that escape by stealth, pickpocketing, things like that, they're still coming in under the residual clause. No question that you can commit them without force and by stealth, but there's still enough of a substantial risk that there'll be a confrontation, that it's like burglary and it comes in under the residual clause. So why was that wrong? Because that's all Fourth Circuit case law and it's basically rejecting the premise of the argument here. It's wrong for two reasons, Your Honor. So first, I would push back on the proposition that a significant or considerable or the most recent body of Fourth Circuit case law applies a broad approach to the residual clause. But do you think you don't, I assume you don't quarrel with the district court's citation to those cases and the holdings of those cases? No, Your Honor. No, Your Honor. But they are all from the early 1990s. There are more recent cases from this court. Martin, which held that federal bank robbery could be performed by deceit, did not satisfy the residual clause. Hemingway, North Carolina's assault and battery of a highly aggravated nature could be performed by less serious means, did not satisfy the residual clause. Carthorne, similarly, assault and battery of a police officer, a second Martin case, Maryland's fourth degree burglary statute could be satisfied. Mr. Osler, I guess the question though is you have to get back to the posture of this case. This is a claim of ineffective assistance of counsel and you're making a very articulate argument for why your view of whether or not abduction, Virginia abduction, doesn't satisfy the requirements of a crime of violence. And of course, Judge Harris has just engaged with you showing cases that should suggest otherwise. So the question is, how obvious does the claim have to be before a lawyer is obligated to bring it as we're looking now with the benefit of hindsight, which we're not allowed to do? So what's your response to that? So I think first, the, the ineffectiveness standard does consider the authorities available to the attorney at the time. Both pro and con, right? Yes, both pro and con, Your Honor. Absolutely. And what Carthorne said is that there must be relevant authority, authority that strongly suggests the sentencing enhancement is improper. To, to put that in context of the residual clause, what this court's case law says is that most, if not all, instances of an offense should involve a serious potential risk of injury in order for that offense to constitute a crime of violence in the abstract. And this, Judge Harris, is where I would distinguish the other cases that the district court cites and where I would point you to the more recent cases from this court. Because under Virginia... But when you say more recent, but they were in existence in 2013. Yes, Your Honor. What's the best case from the Fourth Circuit that this lawyer should have found in 2013 that would have told the lawyer, wait a minute, this is a strong suggestion that this is not covered by the residual clause? I think probably Hemingway, or, I'm sorry, Martin, the Federal Bank robbery case, which said that, you know, even though in some circumstances bank robbery is committed by a defendant who takes a gun into a bank and, and therefore there is the serious potential risk of injury, there are numerous instances where bank robbery can be committed by deceit. And those instances do not satisfy the residual clause. And because they're not, there's not the serious potential risk of injury in most, if not all, instances of that offensive conviction, the residual clause is not satisfied. And I believe that existing... So they've taken the money from the bank by deception. So it's not like the homeowner who surprises the burglar. But it just seems like to me that in an abduction case, even if you perform that through deception, once the victim ascertains that they have been detained against their will, they're not going to be very happy. And they're liable to reach for the first thing they can find and whack whoever deceived them and abducted them. So why wouldn't there be a fairly significant risk of injury there? Your Honor, I would say because of the breadth of Virginia's abduction statute. So certainly we can, we can hypothesize. Well, that goes to how the, the, the victim was actually abducted. But when we're looking at the degree of risk, it's like in the burglary, it's not the actual burglary itself where the individual could simply come in through an unlocked door, that's still a, you know, a breaking and entering in the proper location, a home at night, for instance. And so the victim is deceived and they're abducted and they're held against their will. And then, you know, lo and behold, they figure out, you know, I've been in this location, contrary to my desires, they're not going to be very happy when that happens. Yes, Your Honor, that presumes that the victim would always know that he or she was being kidnapped though. And under Virginia's abduction statute, that's not always the case. The Supreme Court of Virginia has held that no heightened intent or no aggravating circumstances are necessary to support a conviction. The mere unlawful detention of an individual can be sufficient. And we point to a couple of different cases and a couple of different opinions from the Attorney General in our briefs where that was, in fact, the case. I think the best is probably Burton v. Commonwealth, where a man dressed up as a mechanic and convinced a woman to lay down on the front seat of her car, depressed her brake pedal, and he stood at the back of the car with his hand in his pants. And that was sufficient, actus reus, to support a conviction, even though she had no idea that she was being abducted, Your Honor. Similarly, in Kent. Is that really the point though? I mean, once this woman became aware of what happened, why wouldn't she reach out of the front seat and take whatever she could find and whack the guy over the head? I mean, that's where the degree of risk comes in and the risk of injury, isn't it? It is, Your Honor, but I would just point back to the fact that the victim under Virginia convictions doesn't always necessarily know that he or she has been abducted. And under Virginia's law, similar to New York's law, abduction of a child or a minor also satisfies and can support a conviction. And in those circumstances, courts have held that because the child lacks awareness of what's going on and the potential risk for violence, that it doesn't satisfy the residual clause. Can you just remind me, because I can never remember this, but in 2013, was it clear already that when we were looking at the residual clause, we were applying the ordinary case version of the categorical approach? Do you know what I mean? I believe it was, Your Honor. So the fact that you might be able to find one or two true outlier cases was not as important as it is under the straight categorical approach, because you're really supposed to look at the ordinary case? Well, it's true that you look at the ordinary case, Your Honor, but that begs the question of what offensive conviction. And what the government tries to do here is say, let's look at the ordinary kidnapping case, and that allows us to engage in conjecture and hypothesis about, you know, the rest of the rules. I think you're supposed to look at the ordinary case under Virginia law. How is the statute ordinarily used? Exactly, Your Honor. Exactly. But the court has qualified that to say that even in the ordinary case, it must be most, if not all, circumstances that involve a serious potential risk of injury. So turning to prejudice then, the Supreme Court presumes that a defendant who's sentenced under an incorrect guidelines range has been prejudiced, and that's because of the importance of the guidelines at sentencing. By law, that's the starting point for a district court's reasoning. It guides and anchors the district court's discretion, and therefore any error in applying the guidelines range taints the district court's. If we're under the prejudice prong, am I not right about this? At first, you'd have to show there's a reasonable probability that had counsel raised this objection, the district court would have sustained it. So that's the first thing. And then if he had sustained it, if the district court had sustained it, you would have gotten this lower guidelines range, and then you have to show that that would have, okay. Yes. So you're sort of assuming the first, that for all the reasons you've already given us for why the counsel's performance was deficient, for all the same reasons, had he raised this objection, there was a reasonable probability that the district court would have sustained it. That's correct, Your Honor. And I see my time is up. I'm happy to answer the question now or in rebuttal. So I think that it is correct that there would be a reasonable probability the district court would have ruled differently had trial counsel raised this objection, and I think so for a number of reasons. This case was unique in its facts. The first sentencing memorandum that trial counsel submitted is where he affirmatively misrepresented that Mr. Morris was a career offender because of this attempted abduction conviction. Mr. Morris then, by himself without legal training, reviewed his PSR and argued that the attempted abduction conviction did not support the career offender designation. It was on a different ground than it is the issue here, but that would have alerted the trial counsel that this was a potential objection. Further to that point, not a potential abduction, a potential objection, excuse me. Further to that point, the district court noted the receipt of these letters to him at sentencing. He solicited argument and briefing on that point on three different occasions. He continued sentencing for the sole purpose of ensuring that the PSR was correct, that the attempted abduction conviction could serve as a predicate offense, and that the career offender designation was correct. This was the same district court judge who ruled on this motion, right? That's correct, Your Honor. I know my time is up, but I would like to provide some answers. Yeah, I guess the question is, he's already told us what he would have done. So I'm not sure that that's correct because what he said below was that he would have rejected a wholly meritless argument. And he viewed Mr. Morris's objection to the attempted abduction conviction as a predicate offense because Mr. Morris didn't cite any case law for that point below. Had Mr. Morris had counsel that raised this objection, the district court had expressed an interest in the issue and a willingness to engage in the requisite legal analysis. Right. It's very hard to figure out what a judge would have done had an argument been made. That's the whole point of ineffective assistance. There was no adversarial process. I thought we've held in other cases that when we ask this question, it's not a subjective question about what would this judge likely have done. It's an objective question about, is this a sufficiently strong argument that there is a reasonable probability that a reasonable judge would have adopted it? I believe that's correct, Your Honor. Okay. And there's no, I'm sorry, there's no indication in the record from the judge that would have said, regardless of the authorities presented to me or any other consideration, I would have applied the sentence that I did, which can be an exception to these, some of these prejudice. All right. Thank you, Mr. Hosmer. You've got some rebuttal time. Mr. Cook, be glad to hear from you. May it please the court. I think it's helpful to begin by laying out some of the basic boundaries of evaluating a defense counsel's performance under the performance prong of Strickland. And on the one hand, you have this court's precedent that says an attorney's failure to anticipate a new rule of law is not constitutionally deficient. And that's Dias and McNamara that illustrate that principle. Similarly, defense counsel is not ineffective for failing to perceive an extension of precedent. And Lewis versus Wheeler from this court illustrates that. So that's on the one hand. On the other hand, this court in Carthorne said if existing precedent strongly suggested an argument, or as the Eighth Circuit put it in the new case, clearly portends, or the Snyder case that just came out of the Sixth Circuit, they said clearly foreshadow, then it is possible to say that the failure to make an argument where there wasn't clearly controlling precedent could be ineffective. In this case, at the time the attorney acted, there was a large body of precedent from the courts of appeals around the country saying that unlawful imprisonment or false imprisonment offenses would satisfy the residual clause. And as Lafayette's treatise points out, unlawful imprisonment or false imprisonment is usually viewed as a lesser offense than kidnapping. And so you have... Let me ask a question about ineffective assistance of counsel just broadly. We, particularly in death penalty cases, we often are faced with the question of whether or not counsel adopted a reasonable trial strategy by picking option A over option B and we obviously don't, we act with a good deal of deference and we don't engage in hindsight. But part of that is the sort of the analysis of considering whether or not counsel at least considered the proposition and decided for whatever reason that that was not an appropriate way to go. I guess the problem I have here is what would have been the downside of making the claim or making the argument? Well, and I think that goes to a core point about what these principles are saying and when it comes to questions of law like this, the ineffective assistance standards don't compel attorney to raise every debatable legal issue and it doesn't have to pass through a screen of, let me explain my argument. It goes back to the basic rule that as the 11th circuit said, that an attorney is not liable for an error of judgment on an unsettled proposition of law. Or as the Supreme Court said in Yarborough versus Gentry, even if an omission is inadvertent, relief is not an automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy, just with the benefit of hindsight. And so I think what these cases are supporting is that you cannot take the ineffectiveness standard and say, look, this attorney was ineffective because there was a debatable issue that he could have raised. And so now we're going to litigate it on collateral view via ineffective assistance because he didn't raise it. This would, I think, really distort the way the adversary system works. If every debatable issue that was not raised by an attorney had to be shown to be a good strategy call, otherwise we're going to litigate it again on collateral review. It would introduce a level of instability and uncertainty and kind of endless rehash of cases that the ineffective assistance standards are not designed to do. One way to come at that problem is what the Supreme Court in Harrington versus Richter said, which is ineffectiveness can function as a way to escape rules of waiver and forfeiture. And the Strickland standard must be applied with scrupulous care to avoid threatening the integrity of the very adversary process the right to counsel is meant to serve. Well, let me ask you a question in this way, looking at this language from Cawthorne about strongly suggested that there's a case law that are strongly suggesting there's an argument that a particular line of argument would provide an avenue of relief for a particular defendant. So how does the government view that standard? How does a court supposed to apply that standard, vague though it may be, when it looks back at a lawyer dealing with the morass that is the categorical approach, how does the government see that standard? How much does it have to be beyond a jump ball before it's strongly suggested? I think it's a pretty restrictive standard that it be strongly suggested. And you know, the one thing that maybe is a little counterintuitive about these cases is the very fact that there is this a lot of, of turmoil in this crime of violence classification litigation and the Supreme Court's recent opinion and stint earlier this week is a perfect illustration of you had an unbonked Sixth Circuit opinion that said this aggravated Tennessee burglary statute didn't count, divided a lot of opinions. And then the Supreme Court unanimously reverses that. What that shows is, is in fact, not that a defense attorney should have been making these arguments, but that it's very difficult for people to be sure of where the direction of the law is going to go. And I mean, I think an analogy I used in the brief that I think is helpful is if you are required to use a tool that is very difficult to apply, it is harder to say that somebody made a mistake when they don't predict things accurately based on this, excuse me, this tool that's not very helpful. And so, you know, the doctor had a test that is not likely to yield accurate results and had to use that test to say that the doctor was ineffective because the doctor didn't reach the right result using that poor test. That's not the way we, in other areas of law and other realms of our thinking about when someone's done a poor job, that we would say that that person made an error. It hasn't stopped some lawyers and malpractice cases from making that claim, but that's irrelevant to your argument. That is true. This case in many ways I think is a pretty easy one in the sense that there is such a wealth of precedent saying that unlawful imprisonment, false imprisonment satisfies the residual clause and Virginia abduction at worst is within that realm. Let me just ask you a quick question. So you're not defending the part of the district court analysis that relies on generic kidnapping and the enumerated offense clause? I think that that is a harder argument and so for the sake of simplicity and not having a longer brief, I just said, look, the residual clause is the stronger basis. I will rely on that and not burden the court with a lot of argument about whether Virginia abduction counts under enumerated kidnapping. Although admittedly that's an issue with probably greater perspective significance now that the residual clause is gone. But I thought that there was enough to talk about here with the standards for ineffective assistance counsel that I would stick to what I perceive to be the more straightforward way of analyzing the case. And Judge Agee raised a point about the deception cases that I think are the deception means of committing abduction and kidnapping in many statutes. And there is a collection of cases that make the very point you were raising. So most recently the case that I saw making the point is from the Ninth Circuit in 2012 and Delgado Hernandez where they said, and this is citing an en banc Sixth Circuit case from 1994, Kaplansky and they say that deception may be used to affect the kidnapping, does not erase the ever present possibility that the victim may figure out what's going on and decide to resist and turn requiring the perpetrator to resort to actual physical restraint if he's to carry out the criminal plan. And I think that's the intuition that has led courts to say, well it's more than intuition. That's the principle that they have used to say that these offenses that can begin with deception nevertheless satisfy the residual clause standard because in a case where you're detaining someone and you've deceived them into the detention they may come to figure out what's going on and and things could end badly. And in fact this Virginia case of Kent versus Commonwealth could well be a perfect illustration of that where the victim ended up being found dead after having been deceived into being detained. The Burton case I think is significant to note because in that case actually the Virginia courts said there was insufficient evidence to satisfy the abduction statute. And so I don't think that that's a good case to use to show that abduction doesn't satisfy the residual clause because Burton said that there was insufficient evidence in that case and the way in which they said there was insufficient evidence to satisfy the residual clause is really salient to what I was pointing out with Delgado Hernandez and Kaplansky which is they said that there was a failure to show the intent to deprive the victim of liberty and that's the part of unlawful imprisonment or abduction or kidnapping that leads to the danger to the victim is that you know I'm going to continue to hold you and against your will even if you've figured out what's going on and that's where you get the confrontation that produces the substantial risk of physical entry. Anything else? How much weight would you put on our unpublished decision in the Washington case? How does that affect sort of whether an attorney has kind of done his or her due and how much weight could be put on that? Right I think in the context of this case it is most important when viewed against the backdrop of all these published opinions from other circuits that it's just it's a brief opinion but it's consistent with the broad range of cases saying these types of offense count. If you didn't have that it could you know have potentially a different weight. There is of course the fact that Washington dealt with applying the supervised release guideline and this court had a recent unpublished case United States versus Holland 737 Federal Appendix 151. It's not cited in the briefs but I don't think it's terribly important. But the point of Holland was there's a circuit split currently this court doesn't really use the categorical approach under that supervised release guideline. And if you side with the view that says you do then Washington would be right on point. If you side with the view that it doesn't then it would not. But that would just be another unsettled question that would undermine the finding that this attorney was ineffective.  I think that's the easiest and most straightforward. All right. Mr. Hosmer you have some time left.     I think that's the case. I think that's the case. Thank you, Your Honor. So I just would like to make a couple of brief points I think in rebuttal. The first is to bring the analysis back to the specific facts of this case and the specific action or inaction the trial counsel took here. Because ultimately that is what we focus on in the performance prong. The trial counsel when solicited three times to provide argument on the accuracy or inaccuracy of the guidelines range, the career offender enhancement for attempted abduction only provided silence. He punted to his client at every turn. And we think here that silence is evidence that he was ignorant of a fundamental point of law. Because he knew it was an issue. He knew his client contested it. He knew and represented that it would have a significant effect on his client's sentence had the career offender designation not been applied. And yet he didn't say anything about the 2009 D.C. Circuit case. He didn't say anything about the Supreme Court of Virginia cases. He didn't say anything about existing Fourth Circuit cases that are applied in narrow view. Suggesting that he could have said, Your Honor, I've looked at all of this, the D.C. Circuit cases, all the cases, and in my considered judgment this is not an objection worth making? That doesn't seem to make sense. No, Your Honor, but I do think here that there's enough evidence through his omissions below to rebut. By definition if he's not going to make the objection, he's not going to say anything. So I'm not sure what that gets you. Well, I think the point is that given the strong body of case law, including a case that's almost directly on point from the D.C. Circuit, and knowing that this point was at issue and could have a potential serious effect on his client's case, one would expect a reasonable attorney to make the objection. The fact that he didn't, didn't say anything about it, didn't write any briefs on this at all, suggests that he was ignorant of the analytical framework. I mean, I know Carthorne talks about that, but in Carthorne, if I'm remembering right, the lawyer was saying things that made no sense. Like it was clear from what the lawyer was saying that he had no idea what he was talking about. But we don't have anything like that here, right? There's nothing on the record suggesting that this lawyer actually just didn't understand the categorical approach. That's correct, Your Honor. I think at best what we have is, there is evidence in the record that he didn't know Mr. Morris had the attempted abduction conviction early on in proceedings. But I think you're right that Carthorne is slightly distinguishable and that he did make these affirmative statements. I'm not a good lawyer. But to get back to your point, Judge Diaz, I do think that here, that the silence is evidence sufficient to rebut the presumption that counsel acted reasonably. And the 2255 statute contemplates an evidentiary hearing. So maybe that's the proper avenue to examine whether counsel actually was ignorant, whether he did make a strategic decision not to raise the objection. But I think your opponent suggests that even an ignorant omission would not be enough if the case law were sufficiently in flux that it didn't rise to the level of an obvious objection to make. So I'm not sure what an evidentiary hearing is going to accomplish. I think if you got to the point where you said it's a question of whether a reasonable attorney would have made the objection. Was there any strategy involved in not raising the objection? That could be something to examine at the evidentiary hearing. Turning to the residual clause cases that my colleague referenced, he does cite Burton. It was true that that conviction was overturned because of a lack of sufficient mens rea, not actus reus. So in sum, I think existing legal authorities in 2013 strongly suggested that there should have been an objection to the career offender designation for Mr. Morris. Most notably, the D.C. Circuit opinion, a number of Supreme Court of Virginia opinions that say that abduction under Virginia law is much more broad and encompasses far less severe conduct than do most other state statutes. For similar reasons, I think existing case law showed that abduction under Virginia law wouldn't satisfy the residual clause. As a result, Mr. Morris was sentenced under an incorrect guidelines range and was prejudiced by his counsel's non-objection. For that reason, we would ask the court to vacate the decision below and remand free sentencing without the career offender designation. Thank you. Thank you, Mr. Husmer. I want to compliment both counsel on the quality of their argument and the court appreciates the effort you put into this case. I'll ask the clerk to adjourn court for the day and we'll come down and greet counsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: G. Steven Agee, Albert Diaz, Pamela A. Harris